IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2016 MAR 14  PM 2:32

**COURTNEY POWELL,**
           Movant,

-vs-

**UNITED STATES OF AMERICA,**
           Respondent.

Case No. A-15-CA-1106-SS
[No. A-12-CR-381-SS]

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Movant Courtney Powell's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [#71], Movant's Amended Supplemental Memorandum in Support [#73],[1] the Government's Second Response [#82] in opposition, Movant's Second Reply [#83] in support, and the Government's Motion for Extension [#81].[2] Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

On October 2, 2012, Movant Courtney Powell was charged in a two-count indictment with possession with intent to distribute methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). *See* Indictment [#13]. The relevant offense conduct was as follows. On June

---

[1] Powell's original supplemental memorandum appears to be identical to the amended supplemental memorandum, with the exception the original did not contain a certificate of service. *Compare* Supp. Mem. [#72] *with* Am. Supp. Mem. [#73].

[2] The Government's Motion for Extension [#81] is hereby GRANTED.

20, 2012, the Austin Police Department received a "narcotics tip . . . on a methamphetamine dealer identified as Courtney Powell." First Resp. [#76-2] Ex. 2 (Plea Agreement) at 8. Investigation revealed Powell was living with his mother at 13112 Marble Falls Cove in Austin, Texas, that he had a substantial drug-related criminal history, and that he was on state parole until September 20, 2012. *See id.*

On July 31, 2012, "officers learned that a Parole Violation Warrant—Dangerous Drugs" had been issued for Powell. *Id.* On August 28, 2012, after setting up surveillance at the Marble Falls Cove address, officers stopped Powell as he drove away from the residence and arrested him "for the outstanding parole violation warrant[.]" *Id.* Officers searched Powell's pockets and discovered a digital scale, "baggies used in selling narcotics," a cellular phone, and $2,741 in cash. *See id.*; Am. Supp. Mem. [#73] at 2 ("The officers also found $2471 in cash apparently on Petitioner's person."). Based on this evidence, the police called a K-9 narcotic detection dog to the scene. *See* Am. Supp. Mem. [#73] at 2. The dog sniffed Powell's vehicle, and alerted to the presence of narcotics at the center console. *See id.* In a search of the console, the officers recovered 44.84 grams of methamphetamine hidden under an empty false container can ("hide-a-can"). Plea Agreement at 8.

After arresting Powell, officers went to the Marble Falls Cove residence and spoke with Powell's mother, who "consent[ed] to have a K-9 narcotic detection dog enter the residence and sniff [Powell]'s closed bedroom door." *Id.* The dog alerted at the door, and the officers subsequently sought and received a search warrant for the bedroom. *Id.* Inside the bedroom, officers discovered two handguns, their magazines, two boxes of ammunition, and a small amount of methamphetamine. *Id.*; Am. Supp. Mem. [#73] at 3.

Powell entered a plea of guilty to the indictment pursuant to a plea agreement on November 8, 2012. *See* Plea Agreement. On February 22, 2013, the Court sentenced Powell to 160 months' imprisonment on Count 1 and 120 months' imprisonment on Count 2, to be served concurrently; three years of supervised release; and a special assessment of $200. *See* J. [#45] at 2, 3, 7. Powell appealed his conviction and sentence to the Fifth Circuit, and the Government moved to dismiss the appeal. On June 26, 2014, the Fifth Circuit denied the Government's motion to dismiss, but affirmed Powell's conviction and sentence by written opinion. *See United States v. Powell*, 574 F. App'x 390, 392 (5th Cir. 2014) (per curiam). Powell petitioned the United States Supreme Court for a writ of certiorari, which was denied on December 8, 2014. *See* Supreme Ct. Order [#62].

Powell filed his Motion to Vacate pursuant to § 2255 on December 7, 2015, and the Government filed its first response on December 17, 2015. *See* First Resp. [#76]. In its first response, the Government argued Powell's claims were time-barred and, alternatively, could not be considered because they were raised and resolved on appeal to the Fifth Circuit. *See id.* at 2. As the Court explained in its December 30, 2015 Order [#79], the Government's analysis was incorrect in both respects. Accordingly, the Court ordered the Government to file a substantive response to Powell's arguments, which it did on February 16, 2016. *See* Second Resp. [#82]. Powell's motion to vacate is now ripe for decision.

## Analysis

**I.   Legal Standard**

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255: (1) the imposition of a sentence in violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the District Court that

imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255 is an extraordinary measure; it cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). In addition, a defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both "cause" for his procedural default, and "actual prejudice" resulting from the error. *Placente*, 81 F.3d at 558.

**II.     Application**

In his § 2255 motion, Powell claims he is entitled to relief because he received ineffective assistance of counsel. The United States Supreme Court's decision in *Strickland v. Washington* provides the familiar two-pronged test for establishing an ineffective-assistance claim:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687 (1984). Here, Powell argues his attorney rendered ineffective assistance by failing to: (1) "investigate the validity of the arrest warrant and to seek a ruling on the motion to suppress"; (2) "file a motion to suppress evidence seized from [Powell]'s residence" and raise a challenge to the validity of the search warrant; and (3) "present evidence at the sentencing hearing that would

have proved the legitimacy of the funds that were seized from [Powell] on the day of his arrest." The Court addresses each contention in turn.

### A. Investigating the Validity of the Arrest Warrant & Seeking a Ruling on the Motion to Suppress

Powell's first claim is that his counsel was ineffective for failing to investigate whether or not police arrested him pursuant to a valid arrest warrant. Powell contends "there was no valid arrest warrant" and claims this could have been proven by the videotape of his arrest. Relatedly, Powell claims his attorney was ineffective for failing to "seek a ruling" on the motion to suppress that remained pending at the time Powell entered his plea. In the motion to suppress, Powell suggested it was unclear "whether there was, in fact, a valid arrest warrant" at the time of his arrest and argued that even if the arrest was lawful, the search of his vehicle was not justified as a search incident to arrest. *See* Mot. Suppress [#22] at 2.

Powell's assertions that no warrant existed and that his attorney failed to investigate whether a warrant existed are frivolous. As Daniel Dworin, Powell's criminal counsel, explains in his sworn affidavit, he not only obtained the arrest warrant, but showed it to Powell during a meeting at the Bastrop County Jail prior to Powell's decision to enter a guilty plea. *See* Second Resp. [#82-1] Ex. 9 (Dworin Aff.) at 1 (stating he "obtain[ed] a copy of the warrant . . . as well as other materials relevant to assess [its] validity[,]" concluded Powell was "lawfully arrested pursuant to a valid warrant[,]" and "met with Mr. Powell . . . and showed him a copy of the warrant" before Powell pled guilty).

Powell's claim concerning the motion to suppress is similarly meritless. First, it is unclear how Dworin could have "sought a ruling" on the motion to suppress other than by filing the motion to suppress, which Dworin did. In any event, given a valid arrest warrant existed, re-urging the

motion to suppress on grounds there was no arrest warrant would have been futile. "[C]ounsel is not required to make futile motions[.]" *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). As for the search of Powell's vehicle, Dworin explains in his affidavit that during his investigation, he learned the search "was pursuant to police impound policy and based on probable cause from a dog sniff[.]" *Id.* at 2. Powell does not address these points, arguing only that the search was not justifiable as a search incident to arrest.[3] *See* Am. Supp. Mem. [#73] at 9–10. The Court notes that inventory searches of vehicles impounded by the police are constitutional when "conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or disputes over lost or stolen property, and (3) protecting the police from danger." *United States v. McKinnon*, 681 F.3d 203, 209 (5th Cir. 2012). Additionally, as the Fifth Circuit has "repeatedly affirmed," an alert by a drug-detecting dog creates probable cause for a search of the vehicle. *United States v. Sanchez-Pena*, 336 F.3d 431, 444 (5th Cir. 2003). Again, the failure to press futile issues does not render an attorney's assistance ineffective. Powell's first argument is rejected.

### B. Filing a Motion to Suppress Evidence Seized from Powell's Residence and Challenging the Validity of the Search Warrant

Powell next claims his attorney was ineffective for failing to file a motion to suppress the evidence seized from the Marble Falls Cove residence. Specifically, Powell argues the initial entry of the police into the residence violated the Fourth Amendment because his mother was "terrified" to refuse the police entry and "did not feel she had a choice but to let [them] in"; Powell claims the police told his mother "if she did not give them consent and they had to obtain a search warrant, they

---

[3] This makes sense, as the bulk of Powell's argument is an exact reproduction of the motion to suppress, and the motion to suppress was apparently filed before Dworin discovered the vehicle search was conducted pursuant to police impound policy and a dog sniff. *Compare* Am. Supp. Mem. [#73] at 9–10, *with* Mot. Suppress [#22] at 3.

would ransack and search her house from top to bottom." Am. Supp. Mem. [#73] at 11; *id.* Ex. A (Pauletta Powell Aff.). Relatedly, Powell argues his counsel was ineffective by failing to challenge the validity of the search warrant on the grounds the probable cause for the warrant, obtained via the K-9 sniff, was fruit of the poisonous tree, given the officers' initial alleged coercion.

Powell has failed to demonstrate ineffective assistance on these grounds, both of which are ultimately complaints regarding the constitutionality of the officers' initial entry into the residence. Even if it is true, as Powell claims, that the police told his mother they would "ransack and search her house from top to bottom" if she required them to first obtain a warrant before entering the premises, Powell's mother was not in custody, and Powell has made no showing his mother was unaware of her right to refuse consent, in any way uncooperative with the police, or of low intelligence or physically disabled. *See United States v. Hernandez*, 279 F.3d 302, 307 (5th Cir. 2002) (outlining the six factors a court should consider in determining the voluntariness of consent). Fear and nervousness do not preclude a finding that the consent given was voluntary; the Fifth Circuit has held consent to be voluntary in the face of greater displays of force or intimidation than that shown here. *See U.S. v. Solis*, 299 F.3d 420, 438 (5th Cir. 2002) (presence of seven police officers at defendant's residence when he consented to search did not overbear defendant's will). As noted, after receiving consent to enter the residence, police used the K-9 to conduct a drug sniff, and the dog's alert provided probable cause for the warrant to search Powell's bedroom. *See Sanchez-Pena*, 336 F.3d at 444.

Finally, even assuming (1) the veracity of Powell's claims about the statement police made to his mother and (2) that the statement, if made, was a threat to Powell's mother, Dworin exercised professional judgment in declining to pursue a motion to suppress on that basis. Having evaluated

the facts and circumstances, Dworin concluded "the chance of success on any of the various theories of suppression and/or defensive theories were not sufficient to risk a trial and loss of 'acceptance of responsibility' under the Sentencing Guidelines." *Id.* This was an "informed strategic choice" falling well within the "wide range of professionally competent assistance" described by the Supreme Court. *See Strickland*, 466 U.S. at 690. Powell's ineffective assistance claim on this ground is rejected.

C.     **Presenting Evidence Concerning the Alleged Legitimacy of the $2,741**

Finally, Powell argues his attorney was ineffective for failing to present evidence the $2,471 in cash seized from Powell, which was converted to drug quantity for purposes of calculating Powell's sentencing guideline range, was earned from legal activity. This, too, was a reasonable strategic decision made in exercise of professional judgment. As Dworin explains, the police seized "ample evidence" of Powell's drug dealing activities from Powell's cellular phone, but the Government did not offer that evidence to the Court. *See* Dworin Aff. at 3. Dworin feared if he objected to the drug quantity calculation on grounds the $2,741 was legitimate income, the Government would offer that additional evidence to the Court, creating the risk Powell would receive a higher sentence. *See id.* Further, as for the viability of the legitimate income argument, Powell admitted during his presentence investigation report interview that his only source of income during the relevant period of time was dealing methamphetamine. *See* Dworin Aff. at 3 (citing the presentence investigation report). Under these circumstances, counsel made a reasonable choice not to press the issue. That choice did not render his assistance ineffective. *See Strickland*, 466 U.S. at 690. Powell's argument to the contrary is rejected.

All of Powell's ineffective assistance claims lack merit. As such, his § 2255 motion is due to be denied.

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of Powell's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve

encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, a certificate of appealability shall not issue.

## Conclusion

Accordingly:

IT IS ORDERED that Movant Courtney Powell's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [#71] is DENIED;

IT IS FURTHER ORDERED that a certificate of appealability is DENIED; and

IT IS FINALLY ORDERED that the Government's Motion for Extension [#81] is GRANTED.

SIGNED this the 14th day of March 2016.

*[signature]*
SAM SPARKS
UNITED STATES DISTRICT JUDGE